**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**AARON MONROE,**

      **Movant,**

**v.**                             **Case No. 3:10-cv-00866**
                                      **(Criminal No. 3:08-00203-01)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Docket No. 51). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having considered all of the evidence before the Court, the undersigned determines that Movant clearly is not entitled to relief under 28 U.S.C. § 2255; therefore, the undersigned finds that Movant is not entitled to an evidentiary hearing and respectfully recommends that his Motion be denied and this matter be dismissed from the docket of the Court.

## I.    Factual and Procedural Background

On January 24, 2007, Movant Aaron Monroe (hereinafter "Monroe") was stopped by a police officer in the city of Milton for driving a vehicle without working

- 1 -

registration lights. Upon checking Monroe's license, the officer learned that a warrant for Monroe's arrest was outstanding on a charge of passing a worthless check. The officer arrested Monroe and searched his body before placing him in the cruiser.  When the search uncovered a snorting straw and a baggie of a white powdery substance, the officer searched Monroe's vehicle.  The officer found a nine-millimeter handgun and 7.2 grams of cocaine in the glove compartment.

On September 24, 2008, Monroe was indicted by a federal grand jury on five counts, including three counts of distributing a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1), a fourth count of possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1), and a fifth count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).[1]  The fourth and fifth counts of the indictment were based entirely upon the discovery of the handgun and cocaine by the Milton police officer. CJA Attorney Gregory J. Campbell (hereinafter "Campbell") was appointed to represent Monroe on these charges. On December 9, 2008, Monroe entered into a written understanding with the United States in which he agreed to plead guilty to the fourth and fifth counts of the indictment. (Docket No. 29). In exchange, the United States promised to dismiss the remaining three counts.  As part of the plea agreement, Monroe and the United States stipulated to certain facts, including the amount of cocaine in Monroe's possession at the time of his arrest as well as the total amount of cocaine he had distributed on other occasions; Monroe's base and adjusted offense level of 18 for the possession with intent to

---

[1] The factual and procedural history is taken from proceedings of record in Monroe's criminal case and cite to Case No. 3:08-cr-203.

distribute count; and the consecutive five year mandatory minimum sentence for the weapons charge. (*Id.* at 9). On December 15, 2008, Monroe appeared before the presiding District Judge and entered guilty pleas to the fourth and fifth counts of the indictment. (Docket No. 72). After confirming that the guilty pleas were voluntary and intelligent, the Court accepted them and scheduled a sentencing hearing on April 6, 2009.  Monroe was permitted to remain on bond pending his sentencing.

On January 22, 2009, the United States Probation Office filed a Petition for Action on Conditions of Release, asserting that Monroe had moved from his listed address and his whereabouts were currently unknown. (Docket No. 31). An arrest warrant was issued and Monroe was apprehended on February 11, 2009 in the Eastern District of North Carolina.  He was returned to the District, but the incident necessarily caused a postponement of his sentencing hearing until June 29, 2009.

On May 22, 2009, Monroe filed a Motion to Withdraw Guilty Plea arguing that the United States Supreme Court's recent decision in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) provided Monroe with grounds to file a motion to suppress evidence of the cocaine and handgun found in his glove compartment on the basis that the warrantless search performed by the Milton police officer was illegal and, thus, violated Monroe's Fourth Amendment rights. (Docket No. 37). In response, the United States contended that Monroe had failed to assert sufficient grounds upon which to withdraw his plea. In addition, the government argued that a withdrawal of the pleas was futile, because Monroe had stipulated to facts in the plea agreement that essentially constituted a confession of the crimes to which he had pled guilty. The agreement expressly permitted the United States to use the stipulated facts even if Monroe withdrew his guilty pleas. After considering the matter, the Court denied Monroe's

motion finding that he had not provided a fair and just reason to allow withdrawal of his guilty pleas. The Court also concluded that withdrawal of the pleas would be a waste of judicial resources in view of Monroe's stipulation that he possessed 7.9 grams of cocaine with intent to distribute it; that he was carrying a nine-millimeter handgun at the time; and that he had distributed 123 grams of cocaine on other occasions. (Docket No. 39).

On June 29, 2009, Monroe was sentenced to twelve months imprisonment on the possession charge to be followed by the five year mandatory minimum sentence of imprisonment on the weapons charge. (Docket No. 70). Monroe did not appeal his conviction or sentence.

On June 25, 2010, Monroe filed the instant motion pursuant to 28 U.S.C. § 2255 alleging the following four grounds of ineffective assistance of counsel:

1. Campbell failed to conduct reasonable pre-trial investigation or develop a defense strategy.

2. Campbell failed to provide reasonable advice during the plea negotiations; thus, Monroe's plea was neither voluntary nor intelligent.

3. Campbell failed to advocate effectively for a reduction of Monroe's sentence; and

4. Campbell failed to file a timely appeal.

(Docket No. 51). Monroe requests that his "conviction and sentence" be vacated and that the case be remanded for an evidentiary hearing and re-sentencing.

## II.   **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked

jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* 2006 WL 36859 *2 (E.D. Va.). Pursuant to the Rules Governing Section 2255 Proceedings, the court should conduct a preliminary review of the motion. *See Rule 4.* The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See Rules 5, 6 and 7.* Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See Rule 8(a).* If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.  <u>Analysis</u>

The Supreme Court of the United States ("Supreme Court") has long held that the Sixth Amendment of the United States Constitution provides each criminal defendant with "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Id.* at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

In *Strickland*, *supra*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Counsel's performance must be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time . . . ." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). In evaluating whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Wiggins*, 539 U.S. at 523. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). "The question [under *Strickland*] is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington,* 131 S.Ct. at 778.

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro,* 642 F.3d at 450 (citing *Harrington,* 131 S.Ct. at 778). It is

insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In the context of a guilty plea, a movant who alleges ineffective assistance of counsel carries a heavy burden. *Hill v. Lockhart,* 474 U.S. 52, 53 (1985). The movant must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Moreover, statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> [A] defendant's solemn declarations in open court. . . carry a strong presumption of verity. . .because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . .   Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and ***a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.***

*U.S. v. Lemaster,* 403 F.3d at 221-222  (emphasis added).

Monroe complains that Campbell failed to conduct a reasonable pre-trial investigation, alleging that Campbell failed "to contact known government witnesses to ascertain the substance and quality of their testimony" and failed to investigate the existence of "other witness leads," which Monroe claims "would have provided materially exculpatory testimony to use at trial to bolster Counsel's plea negotiation leverage." (Docket 52 at 17). Inasmuch as these contentions contradict Monroe's testimony at the plea hearing, the undersigned finds them to be "palpably incredible" and "patently frivolous or false." At the plea hearing, the District Judge specifically asked Monroe if he was satisfied with the legal advice he had received from counsel. Monroe acknowledged that he was satisfied with Campbell's professional services and confirmed that he had been given enough time to discuss his case with counsel and have his questions fully answered.  (Docket No. 72 at 5).  Monroe also testified that he had reviewed each paragraph of the plea agreement with counsel and wished for the Court to accept the agreement. (*Id.* at 10-11).  Monroe never advised the Court that "exculpatory" evidence existed.  To the contrary, he listened to the Court's explanation of each element of the offenses to which he ultimately pled guilty and then described in his own words the actions he took that made him guilty of the charges.  (*Id.* at 14-18).  Even after the District Judge emphasized that he did not want Monroe "to plead guilty to something unless you are in fact guilty and you believe you're guilty," Monroe proceeded to admit that he possessed cocaine for distribution and carried a gun in connection with his drug trafficking activity. (*Id.).* In view of that testimony, the undersigned **FINDS** no evidence that Campbell provided ineffective assistance of counsel in investigating and preparing the defense.

In addition, Monroe is unable to prove that he was prejudiced by the alleged lack of pre-trial investigation and defense strategy. Certainly, Monroe does not assert, or even imply, that a more robust investigation or defense strategy would have caused him to insist on going to trial rather than entering guilty pleas. Instead, Monroe asserts only that the lack of pre-trial investigation and strategy denied him a better bargaining position in plea negotiations, which simply is not sufficient to succeed on a post-guilty plea *Strickland* claim. An examination of the circumstances surrounding Monroe's guilty plea makes even more improbable a valid claim of ineffective assistance based upon inadequate pre-trial investigation. Monroe was charged in a five count indictment; three counts involved the knowing and intentional distribution of cocaine to a person later identified as a confidential informant. In standard discovery responses, the United States disclosed copies of recorded phone calls between Monroe and the confidential informant; audio and/or video recordings of the controlled buys; DEA laboratory reports confirming the nature of the substances obtained from Monroe; the report of the arresting officer who found the weapon and the cocaine in Monroe's car; and firearms tracing reports.  (Docket No. 20 at 3-8). In addition, the United States had access to voluntary statements made by Monroe, prior to the lodging of any federal criminal charges, in which Monroe admitted to his drug trafficking activity and cooperated with local law enforcement.  (Docket No. 72 at 10-11).  By entering a guilty pleas to possession with intent to distribute and carrying a weapon in relation to drug trafficking, Monroe escaped conviction on the three additional distribution charges and received the benefit of a motion for a substantial assistance reduction. In view of the strength of the evidence against Monroe on the charges contained in the indictment and his own statements at the plea hearing, the undersigned **FINDS** no reasonable basis upon which to conclude

that Monroe would have insisted on proceeding to trial, but for the alleged ineffective assistance of Campbell in the pre-trial investigation.

Monroe also asserts that Campbell was ineffective during the "plea discussion phase of the case," indicating that Campbell failed to give reasonable plea advice, which caused Monroe to enter a guilty pleas that were neither voluntary nor intelligent. (Docket No. 52 at 18-19). In support of this assertion, Monroe submits a declaration, (Docket No. 53), in which he states, *inter alia*, the following:

> 6.     Mr. Campbell at no time discussed or related to me what evidence the government produced in support of its case and the charges against me.
>
> 7.     At no time did Mr. Campbell ask me to describe my version of the facts from my perspective. Nor did he at any time ask whether any drugs seized were for personal use and not for distribution to others.
>
> 8.     Mr. Campbell very early in his representation recommended that I plead guilty and cooperate and if I did so, I would not be sentenced to more than 5 years.
>
> 9.     I indicated, early in the case to Mr. Campbell, that the gun in no way was related to the seizure of the drugs. He nevertheless at no time made any attempt on my behalf to argue this point to limit my sentencing exposure.
>
> 10.     At no time did Mr. Campbell make any attempt to contact any defense witnesses who could credibly support my stated case defenses. Nor did he, at any time, file any motion to exclude or suppress evidence. During the entirety of my case, Mr. Campbell filed one Motion (a Motion to Withdraw Plea).

(Docket 53 at 2-3). Once again, these averments are inherently unreliable, because they contradict Monroe's statements made under oath at the plea hearing. The District Court thoroughly reviewed the elements of each charge and questioned Monroe regarding his understanding of the elements. (Docket No. 72 at 13-18). The Court advised Monroe that the United States would have to prove every element of one or both charges to

obtain a conviction, and Monroe would have the opportunity to challenge the prosecution's witnesses as well as offer his own witnesses and other supporting evidence. After acknowledging his understanding of the charges and his right to a trial, Monroe freely admitted that he possessed the cocaine found in his vehicle for distribution purposes and carried the handgun in furtherance of his drug trafficking activities. Accordingly, even if Campbell failed to question Monroe about the drugs and the gun found in his vehicle and failed to contact defense witnesses, Monroe is unable to demonstrate prejudice.[2] Monroe also contends that counsel "insisted that the Petitioner sign the Government's proposed written plea agreement without offering the Petitioner an opportunity to first read, understand and appreciate the implications of the agreement or the consequences hereto." (Docket No. 52 at 18). However, at the plea hearing, the terms of the agreement were individually reviewed and explained by Campbell.  At the conclusion of this review, the Court expressly asked Monroe:

> THE COURT:        Mr. Monroe, do you understand what this agreement does and what it requires of you?
>
> DEFENDANT:        Yes, sir.
>
> THE COURT:        Do you understand that part of this agreement is the stipulation of facts that could be used against you for this plea – I mean, for sentencing, and in some circumstances, even at trial?
>
> DEFENDANT:        Yes, sir.
>
> THE COURT:        Did you go over each of the paragraphs of this agreement with your lawyer before you signed it?
>
> DEFENDANT:        Yes, sir.

---

[2] The undersigned further notes that before Campbell was appointed to represent him, Monroe had already approached law enforcement, debriefed them regarding his drug trafficking activities, and agreed to cooperate with them.  (Docket No. 72 at 10-12).

THE COURT:        And do you want me to accept the plea agreement?

DEFENDANT:        Yes, sir.

(Docket No. 72 at 10-11). Unquestionably, the precise obligations and consequences of the plea agreement were explained to Monroe before he signed it. Therefore, his contention to the contrary is patently false and frivolous.

A review of Monroe's motion and declaration make it abundantly clear that his primary dissatisfaction with Campbell is not related to the entry of the guilty pleas or even the terms of the plea agreement, but instead centers on Monroe's perception that Campbell "did nothing to assist me in receiving ***the most minimal sentence*** in my case." (Docket No. 53 at 3) (emphasis added). According to Monroe, despite his cooperation, he was sentenced to 72 months, instead of the anticipated 60 months, because Campbell "did no pre-case independent investigation, filed no motions, and as a result was in a very weak and defensive position during plea negotiations." (*Id.*). Monroe offers no argument or evidence to support the conclusion that his guilty plea was anything other than intelligent and voluntary. As such, Monroe waived all nonjurisdictional defects in his case that pre-dated entry of his guilty plea, "including the right to contest the factual merits of the charges." *United States v. Willis,* 992 F.2d 489, 490 (4th Cir. 1993).

Monroe next contends that Campbell was ineffective at the sentencing phase of the proceedings, because he made no effort to mitigate or reduce Monroe's sentence. (Docket No. 52 at 19-20). In particular, Monroe argues that Campbell should have objected to the presentence report prepared by the Probation Officer; should have presented character evidence; and should have sought a reduction of his mandatory minimum sentence of 60 months on the weapons conviction. (*Id.*). These arguments are

unpersuasive. At the sentencing hearing, Monroe admitted under oath that he had read and reviewed the presentence report with his counsel and understood its contents. (Docket No. 70 at 2). He did not identify any factual errors in the report. Contrary to Monroe's allegation, Campbell then asserted two objections to the presentence report; first, he objected to a two-level enhancement suggested by the probation officer for obstruction of justice and, second, he objected to the probation officer's finding that Monroe did not merit a two-level reduction for acceptance of responsibility. (*Id.* at 3-5). The probation officer recommended the two-level enhancement on the basis that, after entering guilty pleas but before being sentenced, Monroe left the Southern District of West Virginia without the prior approval of the probation officer and in violation of his conditions of release. He remained absent from the District for approximately one month with his whereabouts unknown, forcing the probation officer to file a petition seeking an arrest warrant. (Docket No. 70 at 2-6). Monroe ultimately was arrested in North Carolina. His absence and the resulting need for his arrest caused a delay of his sentencing hearing. (*Id.*). The officer further recommended that no reduction be given for acceptance of responsibility, because Monroe continued to use illegally obtained controlled substances while on release; failed to keep appointments for outpatient substance abuse counseling; and failed to appear for urine screens ordered by the probation officer. (*Id.*).

In light of these post-conviction violations, Monroe is hard-pressed to argue that his counsel could have done anything to mitigate the damage that Monroe inflicted upon himself. Unquestionably, Campbell tried to assist Monroe, arguing that Monroe's mother was ill, prompting him to travel to North Carolina to care for her, and that Monroe's addiction was an illness that should not be used against him. Despite

Campbell's efforts, the District Court denied the objections, observing that Monroe made no effort to contact the probation office before he left the District or while he was in North Carolina, causing the need for an arrest warrant and a delay of sentencing. In addition, the Court noted that Monroe not only continued to use drugs while on release, but he repeatedly and willfully ignored his appointments with substance abuse counselors and probation officers. (*Id.*). When bearing in mind Monroe's behavior while on post-conviction release, it is highly unlikely that further argument or "character evidence" would have changed the outcome of the sentencing.

Monroe's complaint regarding imposition of the statutory mandatory minimum sentence is equally without merit. Monroe knew prior to entering a guilty plea that he would likely receive a minimum of 60 months imprisonment on the weapons charge.  In fact, he agreed that the statutory mandatory minimum sentence applied to his case. (Docket No 29 at 5-6).  The United States made a motion for substantial assistance pursuant to § 5K1.1 of the Sentencing Guidelines.  As such, the Court was not authorized to sentence Monroe for a term of imprisonment less than the statutory minimum sentence. *Melendez v. United States,* 518 U.S. 120, 126 116 S.Ct. 2057, 135 L.Ed2d 427 (1996). The United States chose not to request a substantial assistance reduction under 18 U.S.C. § 3553(e) and explicitly chose not to recommend a sentence below the mandatory minimum, both of which were in the discretion of the United States.  (Docket No. 70  at 10-11).  Campbell had no control over these decisions.  The Court granted the motion and reduced the guideline sentence on the fourth count from 37 months to 12 months imprisonment to run consecutively to the 60 month mandatory minimum sentence for the weapons conviction. Explaining his reasoning, the District Judge stated:

Well, in your case, Mr. Monroe, first, you know, if you had shown better sense when you were -- after your guilty plea here, you'd be facing a significantly lower sentence under the guidelines. By my rough calculations, you would have been at something more like a level 15, looking at a 21- to 27-month term of imprisonment or something less than that. Under those circumstances, I probably would have pretty much wiped that out and done what you lawyer has now suggested, which is to give you just the 60-month term.

The Government's motion is specific, that they are not asking that the Court go below the mandatory minimum of 60 months that you have on Count Two. And under the law, they're entitled to take that position; and if they do in making their motion, I can't go below that mandatory minimum. But for the fact that you engaged in this other conduct that we've talked about so much today, you probably would just be getting a 60-month sentence.

The fact is, you didn't do what you should have done, and so I have to keep that in consideration.  And I think that merits punishment. So I'm going to sentence you to a term of imprisonment of 12 months as to Count Four. That's a reduction from 37 to 12, and that reduction reflects your cooperation and providing substantial assistance to the Government.

I am going to impose a term of 60 months, which is the mandatory minimum term for Count Five, and that will be consecutive.

 (*Id.* at 14-15).  Thus, the sentencing transcript reflects two things.  First, that Campbell provided reasonable assistance in representing Monroe at the sentencing hearing. Second, the additional 12-month sentence imposed on Monroe was solely the result of his misconduct after entry of the guilty pleas. Monroe admits that Campbell advised him "to plead guilty and cooperate and if I did so, I would not be sentenced to more than 5 years." (Docket No. 53 at 2). Monroe's failure to listen to the sound advice of counsel does not form the basis of a *Strickland* claim.

Finally, Monroe asserts that Campbell was ineffective for failing to appeal his sentence, indicating as follows:

Given the Petitioner's substantial assistance, both he and Counsel were very surprised and disappointed in the Court's decision to sentence the Petitioner to a 72 month term of imprisonment.  Counsel, could have, but

- 15 -

> did not, challenge the reasonableness of the Court's sentence on Direct
> Appeal.  His failure to even raise this issue as a cognizable issue on direct
> appeal constituted unreasonable conduct and was, ineffective.

(Docket No. 52 at 20).  When a criminal defendant unequivocally instructs his attorney to file a timely notice of appeal, the attorney's failure to file the notice is *per se* ineffective assistance of counsel.  *United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007) "This is true even if the defendant has waived his right to appeal," *United States v. Santana*, 263 F. App'x 334, 335 (4th Cir. 2008)(unpublished) and, therefore, may "obtain little more than an opportunity to lose at a later date." *Poindexter*, 492 F.3d at 273.  Likewise, an attorney must file a notice of appeal when instructed to do so by his criminal client, "even if doing so would be contrary to the plea agreement and harmful to the client's interests." *Id.* However, Monroe does not allege that he directed Campbell to file a notice of appeal, or even that they discussed that option. Instead, he argues that Campbell was ineffective for not appealing the "surprising" sentence on his own volition. The decision to file an appeal rests with the defendant. Accordingly, "[i]n cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken ... the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal ... If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In *Roe*, the Supreme Court specifically addressed the circumstances under which counsel has an obligation to consult with his criminal client regarding an appeal, holding as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the
> defendant about an appeal when there is reason to think either (1) that a
> rational defendant would want to appeal (for example, because there are
> non-frivolous grounds for appeal, or (2) that this particular defendant
> reasonably demonstrated to counsel that he was interested in appealing.
> In making this determination, courts must take into account all the
> information counsel knew or should have known. Although not
> determinative, a highly relevant factor in this inquiry will be whether the
> conviction follows a trial or a guilty plea, both because a guilty plea
> reduces the scope of potentially appealable issues and because such a plea
> may indicate that the defendant seeks an end to judicial proceedings.
> Even in cases when the defendant pleads guilty, the court must consider
> such factors as whether defendant received the sentence bargained for as
> part of the plea and whether the plea expressly reserved or waived some or
> all appeal rights.  Only by considering all relevant factors in a given case
> can a court properly determine whether a rational defendant would have
> desired an appeal or that the particular defendant sufficiently
> demonstrated to counsel an interest in an appeal.

*Roe,* 528 U.S. at 480.  (internal citation omitted).

In the present case, there is no reason to think that Monroe would have wanted to file an appeal, because no non-frivolous ground for appeal existed. In the plea agreement, Monroe waived his right "to seek appellate review of any sentence of imprisonment or fine imposed by the District Court ... so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to offense level 18, plus 60 months consecutive for Count Five." (Docket 29 at 6).  In fact, the District Judge sentenced Monroe to 12 months on Count Four, which was considerably less than the 30-37 month sentence that corresponded to offense level 18. The Court explained the waiver provision to Monroe in detail during the Rule 11 colloquy, advising him that these waivers were generally enforceable. In response, Monroe acknowledged his understanding.  (Docket 72 at 26-27). Accordingly, the waiver was valid and would have precluded Monroe's right to have his sentence reviewed in a post-conviction hearing. *United States v. Wiggins*, 905 F.2d 51, 53-54 (4th Cir. 2000).

Moreover, an appeal could have been considered a breach of the plea agreement. Monroe consented to the United States' use of the stipulated facts in its case-in-chief in the event that Monroe withdrew from the plea agreement or breached its terms, resulting in the need for a trial. The stipulation not only included a confession by Monroe of the facts supporting convictions on the two counts to which he pled guilty, but also included his confession to the distribution of 123 grams of cocaine on other occasions during the period of January 2006 through January 2007. (Docket 29 at 9). In the extraordinary event that his guilty pleas were set aside on appeal, Monroe faced probable conviction on all five counts and the likelihood of a harsher sentence than he ultimately received. In the face of these potential outcomes, a rational defendant would not have sought to appeal the sentence. Moreover, Monroe does not allege that he demonstrated an interest to Campbell that an appeal be pursued. Accordingly, the undersigned **FINDS** that Monroe has not demonstrated ineffective assistance of counsel related to the lack of an appeal.

## IV.   <u>Proposal and Recommendations</u>

For the forgoing, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings contained herein and **RECOMMENDS** that**:**

1.     Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 51) be **DENIED;**

2.     This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, the Respondent, and any counsel of record.

**FILED:** November 4, 2011.

Cheryl A. Eifert
United States Magistrate Judge